Mr. Justice Grier
delivered tbe opinion of tbe court:
Tbe case of Ferreira (13 How., 40) was tbe first to bring before us these claims, under tbe treaty with Spain in 1819. Tbis was in 1857, more tban thirty years after the date of tbe treaty. In tbe opinion of tbe Chief Justice in that case, will be found a concise history of tbe previous legislation of Congress on tbis subject. That case was brought here by way of appeal as from tbe judgment of tbe district court of Florida. And tbis court was importuned to give some utterance by which tbe Secretary of tbe Treasury might be justified in a departure from tbe rule adopted on the subject, with regard to the allowance of interest. In tbe argument of that case tbe Attorney General stated, as a historical fact, that “tbe first of these claims was presented to tbe Secretary of tbe Treasury for payment in tbe year 1825, and others have been constantly and *48 successively presented from that time to the present.” That the number of claims thus presented was about two hundred, and the amouryt paid has exceeded one million of dollars.
But from the first, and in every case where interest has been allowed by the Florida judge, the principal only was paid, and the interest disallowed by the Secretary of the Treasury.
For the last twenty-five years this has been the unvaried and uniform course of decision and action by every successive Secretary of the Treasury who has acted on the subject, sustained by the official opinions of several Attorneys-General, without the express dissent of any one of them officially declared.”
But notwithstanding the persistent importunity of the parties who brought forward these State claims, to obtain some dictum or hint of an opinion that interest for more than thirty years should be paid, this court refused to take jurisdiction and pronounce any opinion on the subject.
Since that time it appears that the Treasury has been thought to labor under the very unusual disease of a plethora, and the Attorney-General, unwilling to “ follow in the footsteps of his predecessors,” has discovered a mode of relief for its depletion by allowing forty years’ interest to these claimants as a reward for their laches in not pursuing them in proper time.
The case before us is an appeal from the decision of the Court of Claims. The case, as stated by the learned judge who delivered the opinion of the court, is as follows :
“ The legal representatives of George Fisher, deceased, by their amended petition, represent that during the lifetime of the said George Fisher, and in the year 1813, a large amount of his property in Florida was taken or destroyed by the troops of the United States. That before his decease, the said Fisher made application to Congress for compensation for the loss and destruction of his property. That after his decease this application was renewed by his legal representatives. That after a delay of several years, and in the year 1848, Congress passed an act for the relief of such legal -representatives, authorizing and requiring the Second Auditor of the Treasury Department to examine and adjust their claims on principles of equity and justice, having due regard, to the proofs, for the value of the property taken or destroyed; providing that the said legal representatives should be paid for the same out of any money *49 in tlie Treasury not otherwise appropriated. This law also enacted, that if it should be fouud impracticable for the claimants to furnish distinct proof as to the specific quantity of property taken or destroyed by the troops, and by the Indians, respectively, it should be lawful for the said accounting officer to apportion the losses caused by said troops and Indians, respectively, in such manner as the proofs should show to be just and equitable, so as to afford a full and fair indemnity for all losses occasioned by the troops; but nothing was to be allowed for property destroyed by the Indians.” — (Sec Stat. at Large, p. 712, vol. 9.)
“That this act of Congress was accepted by the claimants, and that the Auditor proceeded to examine and adjust the claims' under it. That the Auditor refused to receive and consider certain depositions and proofs presented by the claimants because he did not consider them properly authenticated. That the Auditor made what the petition states to be 1 an award’ on the 22d April, 1848, allowing one-half of the value of such property as he considered the proof established had been lost or destroyed, assuming, as is alleged, that one-half of the loss and destruction was occasioned by the Indians, and not by tlie troops. This award amounted to $8,873, and did not, as is alleged, include interest or compensation for the losses and injuries sustained.
“ That in December, 1848, the Auditor (at whose instance does not appear) reconsidered the case, corrected an error in calculation of one hundred dollars in favor of the claimants in his former report, and allowed interest on the amount as corrected by him, being $8,973, from 1832, the date of the first application for relief, to the date of the allowance in 18-18, which interest amounted to $8,997.91. Not yet satisfied, the complainants demand interest from the time of the loss until the award, at the rate of interest allowed in Florida. What that rate was does not appear. This renewed controversy was submitted by the Auditor and the claimants to the Attorney-General, who gave an opinion that interest at the rate of six per centum should be allowed from the date of the loss to the time of the allowance. Upon this a further allowance of interest was made by the Auditor, amounting to $10,004.89. All which allowances were granted under the original act of April 12, 1818, and were paid t'o the claimants as fast as the Auditor furnished his statements.
*50 “ The claimants, still feeling aggrieved, renewed their application to Congress, and asked relief from the ruling of the Auditor, complaining that he had excluded certain depositions, which he deemed not properly authenticated.
“ Thereupon, on December 22,1854, Congress passed a supplemental act, directing the Auditor to re-examine the case, and to allow the claimants the benefit of the depositions theretofore marked ‘ rejected for want of authentication,’ provided they were then legally authenticated, the adjustment under this supplemental act to be made in strict accordance with the previous act.
“ What steps, if any, were taken under this supplemental act by the Auditor are not stated.
“ On the 3d of June, 1858, a joint resolution was passed, de- ■ volving upon the Secretary of War the execution of the supplemental act above referred to, directing him to proceed de novo to execute the act and its supplement according to their plain and obvious meaning, but to deduct from any amount which might be found justly and equitably due to the claimants all sums which had been previously paid.
“ The Secretary of War proceeded to examine the case, an d estimated the value of the property destroyed and taken at a sum higher by $158 than the Auditor had done; but he also found that all the property had been destroyed by the troops, and none of it by the Indians. Thereupon he allowed for the entire value of the property, instead of half its value, and added interest from the date of the destruction, making a further sum- of $39,217.50. This sum was also paid to the claimants.
“Still dissatisfied, another petition was presented by these' claimants to Congress, and on the 1st of June, 1800, another joint resolution was passed, authorizing and requiring the Secretary of War to revise his execution of the supplemental act aforesaid, and on said revision to give effect to all the testimony filed, including the depositions formerly rejected by the Auditor, and to restate and resettle the account, and to make such corrections in his former statement and settlement, and such further allowances, if any, as, in. his opinion, justice to the claimants should require.
“ That the Secretary of War did revise his statement and resettle the account, and on the 23d' November, 1800, stated his *51 conclusions in favor of tlie claimants, making a further allowance of $GG,519.85.
“ The object of this petition is to obtain from this court a judgment for this further allowance of $66,519.85.
“It also appears that on the-2d of March, 1861, Congress passed a joint resolution declaring the resolution of the 1st of June, 1S60, under which the Secretary of War had made the last allowance, rescinded, and pronounced the same and all the proceedings under it, null and void.
“ This repealing resolution, the petitioners aver, was passed without their knowledge or consent, or without notice to them, and that by reason of it they have not been paid; also insisting that it is inoperative, unauthorized and void, without power to affect the second allowance of the Secretary of War, which they insist had vested in them a right beyond the reach of Congress.
“ This petition was demurred to by the solicitor, upon' the ground that it does not show a valid subsisting claim against the United States.”
The language of the court in its decision of this question is as follows: u There not being any cause of action or claim set up in the petition save that founded upon the finding of the . Secretary of War, under the resolution approved June 1,1860, claimed to be an award, and holding, as a majority of the court ■ does, that that resolution, and all action under it, toas declared to he, AND BECAME, NULL AND VOID BY THE BORCE AND EBBECT OB THE' REPEAL OB MARCH 2,1861, THE DEMURRER IS SUSTAINED and the petition dismissed. The only question, therefore, presented by the record in this case is, whether the court below gave a proper construction to the repealing resolution of March 2,1861.”
The whole argument urged on behalf of the appellants is founded on a false assumption. It is asserted that this isa case of arbitrament and award, and was binding as such on the Government, and that the repeal of the resolution of Congress could not affect or invalidate rights vested by the award previously made under it. But the Secretary of War was not an arbitrator. An arbitrator is defined (Bouvier’s Law Die., title “ Arbitrator”) as “ a private extraordinary judge chosen by the parties who have a matter in dispute, invested with power to decide the same.” The Secretary of War acted ministerially. *52 The resolution conferred no judicial power upon him. (13 How., 45; DeGroot v. United States, 5 Wallace, 432.)
In order to clothe a person with the authority of an arbitrator, the parties must mutually agree to be bound by the decision of the person chosen to determine the matter in controversy. The resolution under which the Secretary assumed to act did not authorize him to make a final adjustment of the matter embraced in it. It did not bind the appellant to an acceptance of'the amount reported by the Secretary, or that he would cease to clamor for more, after being a fifth time paid the amount of damages awarded to and accepted by Mm.
The joint resolution' of June 1,1800, was the fourth resolution which had been passed for the adjustment of the claim of the legal representatives of George Fisher against the United States, for injuries done to his property by the United States troops in 1813. In pursuance of the first three of these resolutions, five different allowances were made in- favor of, and paid to, the appellant, amounting in all to sixty-six thousand eight hundred and three dollars and thirty-three cents. If the finding of the Secretary of War, under the joint resolution of June 1, 18G0, was final and conclusive, so, also, must have been tire finding and allowance of the Second Auditor of the Treasury, under the joint resolution of April 12, 1848. Yet the appellant insisted that he was not concluded by the finding of the Second Auditor. He claimed and received after this allowance four additional allowances.
An arbitrament and award which concludes one party only, is certainly an anomaly in the law. The various acts and resolutions of Congress in this case emanated from a desire to do justice, and to obtain the proper information as a basis of action, and were not intended to be submissions to the arbitrament of the accounting officer. They were designed as instructions, to the officer by which to adjust the accounts, Congress reserving to itself the power' to approve, reject, or rescind, or to otherwise act in the premises as the exigencies of the case might require. In other words, these references only require the officer to act in a ministerial, not a judicial, capacity.
The joint resolution of June 1, I860, gave the appellant a tribunal before which his claims might be investigated. The *53 repeal of that' resolution only deprived him of that tribunal. It was competent for Congress to abolish the tribunal it created for the adjustment of the appellant’s claims, or it might have committed them to some other authority. In either event the claimant’s right would not have been violated, only his remedy for the enforcement of those rights would have been taken away or changed. The power that created this tribunal might rightfully destroy it, unless some rights had accrued which were the result of the creation of such tribunal, and inseparable from it. Here no such rights had resulted from the passage of this resolution. The appellant was left where that resolution found him. I-Iis right to importune Congress for more was not at all impaired by its repeal.
JUDGMENT APPIRMED.